UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JOSE IGNACIO RAMIREZ
HERNANDEZ, individually and on
behalf of all others similarly situated,

     *Plaintiff*,

v.

GENERAL MOTORS LLC,

     *Defendant*.

Civil Action No.: _____

Complaint – Class Action

Jury Trial Demanded

## COMPLAINT

Jose Ignacio Ramirez Hernandez, individually and on behalf of all others similarly situated, sues General Motors LLC (GM) for designing, manufacturing, marketing, and selling 2019–2024 model-year vehicles equipped with the defective 6.2L V8 L87 engine.

## Introduction

1.    GM's new engine—the 6.2L V8 L87—is dangerously defective and has no resale value. One engine failed after four miles of driving. Other consumers have experienced "sudden and catastrophic" engine failures within days of buying vehicles GM equipped with the engine. Some consumers have had the defective engine repaired only to have the repaired engine fail twice more. The problem is so widespread that GM has been telling service centers, in effect, that it doesn't have enough parts to fix all the broken engines. This has left consumers stranded with little reason to believe that GM will rectify it. And no one wants to buy a motor vehicle prone to engine failure.

2.     GM incorporated the defective engine in the 2019–2024 Chevrolet Silverado 1500, 2021–2024 Chevrolet Tahoe, 2021–2024 Chevrolet Suburban, 2019–2024 GMC Sierra 1500, 2021–2024 GMC Yukon, 2021–2024 GMC Yukon XL, 2021–2024 Cadillac Escalade, and 2021–2024 Cadillac Escalade ESV ("class vehicles"). So far, GM has sold nearly 1 million class vehicles.

3.     The class vehicles are subject to complete failure with little or no warning. Repairs are complex, expensive, time-consuming, and sometimes the repaired engines also fail. The result is substantial diminution in value and loss of use for the owners whose engines have failed. Plaintiff and the proposed class members also paid more for the class vehicles than they would have paid if they'd known the vehicles were equipped with a defective engine. Plaintiff's claims are typical of the class: he bought a new 2022 Chevrolet Silverado 1500, and its engine failed; he could not use the truck for over two months while GM tried to fix it.

## Parties, Jurisdiction & Venue

4.     Plaintiff Jose Ignacio Ramirez Hernandez is an adult U.S. citizen and a citizen of the State of Georgia.

5.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business in Michigan. (General Motors Company owns 100% of General Motors Holdings LLC which owns 100% of General Motors LLC. All these entities were incorporated or organized in Delaware, and all have their principal place of business in Michigan.) General Motors LLC is registered to do business in Georgia and may be served with process through its registered agent: CSC Networks, Inc., 407 East Ma-

ple Street, Suite 204, Cumming, Georgia 30040. The Court has general personal jurisdiction over General Motors LLC.[1] Even if the Court lacked general jurisdiction, it certainly has specific jurisdiction.[2] GM does substantial business in Georgia, and the claims here arise from or relate to the business GM does in Georgia.

6.     GM is responsible for the design, manufacture, distribution, marketing, and sale of all GM vehicles in the U.S., including the class vehicles with the defective engine.

7.     The Court has subject-matter jurisdiction under 28 USC § 1331 because the complaint makes a federal statutory claim. The Court also has subject-matter jurisdiction under § 1332(d) because there are at least 100 potential class members, the amount in controversy exceeds $5 million (exclusive of interest and costs), and at least one class member is a citizen of a state different from that of any defendant. The Court has supplemental jurisdiction over Plaintiff's and other class members' state-law claims under § 1367.

8.     Venue is proper in this district and division under 28 USC § 1391 and Local Rules 3.1(B)(2)–(3) because Plaintiff bought a defective vehicle here and experienced an engine failure here. GM also maintains its Georgia registered agent in this district and division.

---

[1] *See Mallory v. Norfolk S. Ry.*, 600 U.S. 122 (2023); *Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422 (2021).

[2] *See Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

## Factual Background

9.     In 2019, GM introduced the 6.2L gasoline V8 L87 engine to replace its predecessor, the L86.[3] GM touts that the engine is "buil[t] upon the previous 6.2L L86 with Integral components for Automatic Start/Stop capability and available Dynamic Fuel Management (DFM) for even greater efficiency."



GM full size truck L87 engine shown

10.     GM markets class vehicles equipped with the engine as "rugged" and "reliable" workhorses.[4] Its marketing targets everyone from "daily driver[s]" to "hardworking professionals" and "adventure seekers."[5]

11.     But people who bought class vehicles started having engine failures and dozens lodged complaints with the National Highway Traffic Safety Administration.[6] Customer complaints include "a bearing failure that may result in either engine seizure or breaching of the engine block by the connecting rod."[7] For consumers, the engine failures are unpredictable: "there is no detectability prior to the failure."[8] And these engine failures create "an in-

---

[3] Lewin Day, *GM's 6.2-Liter V8 Is Seizing Up At Highway Speeds And Leaving Owners Stranded*, TheAutopian.com (Jan. 20, 2025), available at https://tinyurl.com/4t747p59.

[4] *E.g.*, Cassie Gould, *2022 Chevrolet Silverado 1500 LTD: Rugged, Reliable, and Feature-Packed Pickup* (Dec. 24, 2024), available at https://tinyurl.com/34rh6zxb.

[5] *Id.*

[6] *See* Ex. 1, *ODI Resume*, Investigation No. PE25001.

[7] *Id.*

[8] *Id.*

creased risk of a crash resulting in injury and/or property damage," according to the Administration.[9]

12.    Consumers have confirmed that the risk is real. One professional driver, for instance, reported that his 2021 Yukon XL failed on the highway in November 2024 with just 35,000 miles on the odometer. GM replaced the engine, but the replacement engine failed too, again on a highway. The replacement engine failed a third time, yet again on the highway. As the driver put it, "this vehicle is not safe at all," and on "these three occasions I have been lucky not to be hit."[10] GM has known about these defects with the subject engine since at least 2021.

13.    Another customer also had a class vehicle fail on the highway, and mirroring Plaintiff's experience, GM took two months to repair it. The service manager and mechanic said, "there was a refinement to the wrist pin retaining clip design to prevent the connecting rod from … causing the failure."[11]

14.    On January 16, 2025, the Administration began investigating engine failures in class vehicles. Some 877,710 vehicles have the same engine and the same problem, according to the Administration, including the class vehicles.

---

[9] *Id.*

[10] Ex. 2, NHTSA ID No. 11627117 (Nov. 23, 2024).

[11] Soundtech10, *r/gmc: 2025 6.2 Fixed?*, Reddit.com (Mar. 31, 2025), available at https://tinyurl.com/372xcjbn

15. Since the Administration opened the investigation, there have been "more than a thousand complaints" of "sudden and catastrophic [engine] failure."[12] This is "a major quality control issue," "leaving many owners stranded with disabled vehicles and no clear timeline for repairs."[13]

16. Less than a month after opening the investigation, the Administration wrote to GM pointing out hundreds of engine failures in class vehicles and requesting information about the issue.



Ex. 3, Ltr. from NHTSA to GM (Feb. 12, 2025)

17. GM provides express warranties for the class vehicles. The typical powertrain-component warranty provides coverage for five years or 60,000 miles, whichever comes first.

---

[12] Byron Hurd, *GM's Broken 6.2L V8s Are Stranding Owners for Weeks as Replacement Engine Pipeline Dries Up*, TheDrive.com (Jan. 27, 2025), available at https://tinyurl.com/42ybuwaw.

[13] Johnathan Lopez, *GM Can't Keep Up With 6.2L V8 Engine Replacements*, GMAuthority.com (Feb. 1, 2025), available at https://tinyurl.com/mr4emnph.

18.    Even with those warranties, GM has left many customers stranded for weeks, and "it's especially dire for people who need their trucks for work."[14]

19.    "[A] dead motor is just the beginning of this ordeal for many GM customers."[15] Even though many of the defective engines are in new models "and still under warranty, that does customers no good when GM dealer service departments have no replacement engines to offer."[16] "A company source confirmed ... that right now GM can't build components of its 6.2s fast enough to both meet the demand in new trucks and fix all the broken ones."[17]



Hurd, *GM's Broke 6.2L V8s*, note 9

20.    Plaintiff bought a new 2022 Chevrolet 1500 at Andean Chevrolet in Cumming, Georgia. The truck's engine failed—with just 46,397 miles on

---

[14] Hurd, *GM's Broken 6.2L V8s,* note 9.

[15] *Id.*

[16] *Id.*

[17] *Id.*; *see also* GM, *Customer Satisfaction Program N232413430 Oversized Lifter Bores* (Apr. 2024), available at https://tinyurl.com/5n77dc4r.

the odometer—while Plaintiff was on his way to work. The defect manifested itself. His experience is typical of the class.

21.    Class vehicles have had engine failures essentially on their way out of the dealers' lot—or in it. For example, a 2023 Cadillac Escalade's engine failed within four miles.[18]



22.    The figure above shows that vehicle's displaced wrist pin and broken connecting rod involved in the engine failure.



---

[18] Dave's Auto Center, *6.2L Engine FAILS After Just 4 Miles!* (Jan. 29, 2025), available at https://tinyurl.com/3cbe5n4k.

23.    The Administration describes the defect as "internal engine component failure." That component failure results from improper installation of the wrist pin and circlip (a.k.a. retainage clip), or due to missing circlips. Either of those failures allows wrist-pin displacement, as shown in the figure above, and connecting-rod failure.

24.    The failures are mostly associated with cylinder deactivation, which was supposed to improve efficiency. That promise of increased efficiency has proven false. In fact, GM vehicles without cylinder deactivation do not have these engine problems.

25.    To date, GM has not issued a recall on the class vehicles.

## Class Allegations

26.    Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (c)(4)–(5) as representative of this class:

> All individuals in the U.S. who purchased a 2019–2024 Chevrolet Silverado 1500, 2021–2024 Chevrolet Tahoe, 2021–2024 Chevrolet Suburban, 2019–2024 GMC Sierra 1500, 2021–2024 GMC Yukon, 2021–2024 GMC Yukon XL, 2021–2024 Cadillac Escalade, 2021–2024 Cadillac Escalade ESV, other than for resale, between the launch of the L87 in 2019 and the present.

27.    The following persons and entities are excluded from the class: GM, its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation.

28.    The class comprises about 877,710 people. Plaintiff reserves the right to modify, change, or expand the class definitions based upon discovery and further investigation.

29. ***Numerosity.*** GM sold at least 877,710 class vehicles to class members throughout the country making joinder is impracticable.

30. ***Typicality.*** Plaintiff's claims are typical of the class. Like every other class member, Plaintiff bought a class vehicle (subject to a common express warranty) that he would not have purchased, or would have paid substantially less for, had he known of the defect or how inadequate GM's response would be.

31. ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of the class. He has no interests antagonistic to the interests of other class members and is committed to vigorously prosecuting this case.

32. Plaintiff has retained competent counsel experienced in prosecuting class actions involving defective consumer products.

33. ***Predominance.*** Common class-wide questions of law and fact predominate over any questions that may affect only individual class members because GM has acted on grounds generally applicable to the class as a whole.

34. Questions of law and fact common to the class include:

    a. whether the class vehicles were defective at the time of sale;

    b. whether the defect substantially impairs the class vehicles' value;

    c. whether GM knew of the defect but nevertheless continued to promote and sell the class vehicles without disclosing the defect and its consequences to consumers;

    d. whether a reasonable consumer would consider the defect and its consequences material;

e.  whether GM carried out the discretion it afforded itself under its warranty in good faith;

f.  whether GM breached express and implied warranties for the class vehicles;

g.  whether class members overpaid for their vehicles in light of the defect;

h.  whether class members are entitled to equitable relief, including restitution or injunctive relief; and

i.  whether class members are entitled to money damages or compensatory relief, and if so, in what amount.

35.  ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and because of GM's financial resources, no class member is likely to pursue legal redress individually for the violations detailed in this complaint. Individualized litigation would significantly increase the delay and expense to all parties, and to the Court, and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

36.  Class certification is also appropriate under Rule 23 because:

a.  the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for GM;

b.  the prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members and not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

c.  GM acted or refused to act on grounds generally applicable to the class, thereby making appropriate financial injunctive relief for the members of the class as a whole; and

d.  the class members' claims include common issues that are appropriate for certification.

## Claims
## Claim 1—Violation of the Magnuson-Moss Warranty Act

37.  Plaintiff incorporates the foregoing allegations here.

38.  Plaintiff makes this claim on behalf of all class members. The Court has jurisdiction under 28 USC § 1332(a)–(d).

39.  The class vehicles sold as new are "consumer products" under the Magnuson-Moss Warranty Act.[19]

40.  Plaintiff and the class members are "consumers" within the meaning of the Act.[20] They are consumers because they are people entitled by applicable state law to enforce implied warranties against GM. GM is a "supplier" and "warrantor" under the Act.[21]

---

[19] 15 USC § 2301(1).

[20] *Id.* at § 2301(3).

[21] *Id.* at § 2301(4)–(5).

41.    The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty. [22]

42.    GM provided Plaintiff and the class members with an implied warranty of merchantability for the class vehicles, an "implied warranty" under the Act.[23] As part of that implied warranty, GM guaranteed that the class vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

43.    GM breached its implied warranties and is thus liable to Plaintiff and the other class members under the Act.[24] For example, the class vehicles share common design, manufacturing, and assembly defects in that they are equipped with the same defective engine, which can suddenly fail during normal operation, leaving occupants of the vehicles vulnerable to crashes, serious injury, and death at highway speeds.

44.    In its capacity as a warrantor, GM had knowledge of defects inherent in the class vehicles.

45.    Any effort by GM to limit the implied warranties that would exclude coverage for class vehicles is substantively unconscionable, procedurally unconscionable, or both.

46.    Plaintiff and the class members have had sufficient direct dealings with GM, its agents, or both to establish privity of contract. Even so,

---

[22] *Id.* at § 2310(d)(1).

[23] *Id.* at § 2301(7).

[24] *Id.* at § 2301(d)(1).

privity is not needed here because Plaintiff and the class members are intended third-party beneficiaries of contracts between GM and its dealers. The dealers were not intended to be the ultimate consumers of the class vehicles and have no rights under the warranty agreements provided with the class vehicles. The warranty agreements were, after all, designed for and intended to benefit consumers. In any event, privity is not needed because the class vehicles are dangerous instrumentalities.

47.    Under the Act, Plaintiff and the class members are entitled to bring this class action and are not required to give GM notice or opportunity to cure until the Court determines the representative capacity of Plaintiff under Rule 23.[25]

48.    Plaintiff and the class members would suffer economic hardship if they returned their class vehicles but did not receive the return of all payments they have made. Plaintiff and the class have not re-accepted their class vehicles by retaining them.

49.    The amount in controversy for Plaintiff and the class members' individual claims meets or exceeds $25. The amount in controversy of this action exceeds $50,000 (exclusive of interest and costs), computed on the basis of all claims to be determined in this lawsuit. [26] Plaintiff, individually and on behalf of all other class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. The Act also entitles Plaintiff and the class members to recover their

---

[25] *Id.* at § 2310(e).

[26] *Id.* at § 2310(d)(3).

aggregate costs and expenses (including attorneys' fees based on actual time spent) that are reasonably incurred in the commencement and prosecution of this civil action.

### Claim 2—Breach of Express Warranty

50.    Plaintiff incorporates the foregoing allegations here.

51.    Plaintiff brings this claim individually and on behalf of other members of the Georgia class.

52.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under OCGA §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

53.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under OCGA § 11-2A-103(1)(p).

54.    The class vehicles are and were at all relevant times "goods" within the meaning of OCGA §§ 11-2-105(1) and 11-2A-103(1)(h).

55.    GM created and extended to consumers an express warranty in connection with every sale of its vehicles by GM.

56.    GM provides an express warranty for class vehicles for up to 5 years or 60,000 miles.[27]

57.    As further stated in the express warranty, "[t]he warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period."[28]

---

[27] *See* Ex. 4, *Limited Warranty* 2, 5.

[28] *Id.*

58.     As further stated, warranty repair, including towing, parts, and labor, will be made at no charge.

59.     GM's express warranty formed the basis of the bargain that was reached when Plaintiff and the other class members purchased or leased their class vehicles equipped with the defective engines.

60.     GM breached the express warranty to repair "any defect" by failing to repair the defective engine.

61.     Further, if the express warranty is construed to be limited to vehicle defects related to materials or workmanship, GM has breached the express warranty.

62.     GM has not repaired, and has been unable to repair, the engines in the class vehicles.

63.     GM's class vehicles were defective at the time of sale. The defect in new GM vehicles is with the L87 engines. Newly-purchased GM class vehicles started having engine failures without warning—rendering the class vehicles unsuitable for their primary purpose—and existed at all relevant times after first sale.

64.     Plaintiff and other class members used their GM class vehicles in a manner consistent with the vehicles' operating instructions before manifestation of the engine defect.

65.     GM was on actual notice of the defective nature of the class vehicles prior to sale and received timely notice of the breaches experienced by Plaintiff and other class members.

66.    GM received notice of the pending investigation into the widespread engine failure by NHTSA on January 16, 2025.[29]

67.    GM's failure to provide Plaintiff and other class members with a non-defective replacement vehicle or a refund of the purchase price departs from commercially reasonable behavior and violated Plaintiff's and other class members' objectively reasonable expectations arising from the express warranty.

68.    The express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the class members whole because GM failed/or has refused to adequately provide the promised remedies in a reasonable time.

69.    Accordingly, recovery by Plaintiff and the class members is not limited to the express warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the class members, seeks all remedies as allowed by law.

70.    Moreover, much of the damage flowing from the class vehicles cannot be resolved though the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the class members' remedies would be insufficient to make Plaintiff and class members whole.

---

[29] *See* Exs. 1 & 3.

71.     Any attempt by GM to disclaim or limit its express warranties by way of consumers would be inappropriate under the circumstances. Any asserted limitation is unconscionable and unenforceable because GM knowingly sold a defective product without informing consumers and failed to honor its express warranties.

72.     As a direct and proximate result of GM's breaches of express warranty, Plaintiff and class members have been damaged in an amount to be proven at trial.

### Claim 3—Breach of Implied Warranty of Merchantability

73.     Plaintiff and class members incorporate the foregoing allegations here.

74.     Plaintiff makes this claim individually and on behalf of nationwide class members.

75.     GM is and was at all relevant times a "merchant" with respect to motor vehicles under OCGA §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

76.     With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under OCGA § 11-2-103(1)(p).

77.     The class vehicles are and were at all times "goods" within the meaning of OCGA §§ 11-2-105(1) and 11-2A-103(1)(h).

78.     A warranty that the class vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to OCGA §§ 11-2-314 and 11-2A-212.

79.    GM implicitly warranted that the class vehicles were of merchantable quality and fit for their ordinary and intended use as vehicles. Vehicles whose engines seize or fail altogether are neither merchantable nor fit for their intended use.

80.    The defects in the engine and the class vehicles existed at the time of sale. For example, Plaintiff bought a 2022 Chevrolet Silverado 1500 equipped with the defective engine. The defect in the engine causes engine seizures and engine failure. The engine in Plaintiff's vehicle failed and had to be replaced. Plaintiff has experienced usability issues: he had to take the vehicle in for repairs which took nearly two months. And there remains a risk of engine seizure or future engine failure.

81.    Plaintiff's vehicle is currently or was at some point not drivable because of the defective engine.

82.    Plaintiff and class members either bought their class vehicles directly from GM, who manufactured the class vehicles, or from its authorized dealers.

83.    GM breached the implied warranty of merchantability in connection with its sale and distribution of the class vehicles. At the point of sale, the class vehicles obtained a latent manufacturing defect whose manifestation renders the product unfit for its ordinary and intended purpose—driving. The defect existed when the class vehicles left GM's possession and is substantially certain to manifest.

84.     Had Plaintiff and class members known of the defect in the class vehicles, they would not have purchased or would have paid significantly less for them.

85.     Plaintiff and the class members furnished GM with an opportunity to cure its breach of warranty and otherwise complied with any and all obligations under the implied warranty of merchantability. That said, and despite knowing of the defect before or concurrently with the release of the class vehicles, GM has refused to provide Plaintiff and other class members with appropriate warranty relief, leaving them without the functional product they thought they were buying.

86.     Moreover, providing additional notice to GM now is futile because GM has continually failed to provide adequate remedies to Plaintiff and class members.

87.     Based upon these defects, GM has failed to meet the expectations of a reasonable consumer.

88.     As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and other class members have sustained damages in an amount to be determined at trial.

### Claim 4—Unjust Enrichment

89.     Plaintiff and the class members incorporate the foregoing allegations here.

90.     Plaintiff and the class members make this claim in the alternative to any contract-based claims.

91.     GM has received and retained a benefit from leasing and selling class vehicles to Plaintiff and class members and inequity has resulted.

92.     GM has benefitted from selling and leasing the class vehicles, for more than they were worth because of their concealed defects, at a profit, and Plaintiff and class members have overpaid for the vehicles and have been forced to pay other costs.

93.     It is inequitable for GM to retain these benefits.

94.     Plaintiff and other class members were unaware of the defects in their class vehicles and did not benefit from GM's conduct.

95.     GM knowingly accepted the benefits of its unjust conduct.

96.     As a result of GM's conduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other class members in an amount to be proven at trial.

## Claim 5—Attorney's Fees & Costs

97.     Plaintiff and the other class members incorporate the foregoing allegations here.

98.     GM has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff and the class members unnecessary trouble and expense.

99.     Under OCGA § 13-6-11, GM is liable for Plaintiff's and the classes' attorney's fees and litigation expenses.

## Prayer for Relief

Plaintiff, individually and on behalf of the class, demands judgment:

a.   Declaring that this action is a proper class action, certifying the nationwide class, designating Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

b.   Ordering GM to pay all damages the law allows, including but not limited to, diminished value and loss of use, to Plaintiff and class members;

c.   Ordering GM to pay attorneys' fees and costs; and

d.   All other relief, including equitable relief, as the Court deems just.

## Jury Demand

Plaintiff and the class members demand a jury trial.

Dated: April 3, 2025          Respectfully submitted,

*/s/ Robert D. Cheeley*
Robert D. Cheeley
Georgia Bar No. 122727
Andre T. Tennille III
Georgia Bar No. 940510
Gabrielle D. Gravel
Georgia Bar No. 449376
McKenzie R. Nadel
Georgia Bar No. 251909
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway
Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
bob@cheeleylawgroup.com
dre@cheeleylawgroup.com
gabby@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com

*Counsel for Plaintiff and Proposed Class Counsel*